The Spanish American Tobacco Company, Inc., Plaintiff and Appellee, *v.* Luis A. Izquierdo, Commissioner of Agriculture and Commerce, Defendant and Appellant.

No. 9330. Argued November 14, 1946.—Decided April 9, 1947.

*Luis Negrón Fernández, Acting Attorney General (E. Campos del Toro,* former *Attorney General,* on the brief), and *J. Rivera Barreras, Assistant Attorney General,* for appellant. *Rafael Arjona Siaca* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

The plaintiff is the owner of a certain quantity of cut tobacco which has been confiscated by the defendant in his capacity as Commissioner of Agriculture and Commerce pursuant to Act No. 16 of 1939, Special Session Laws, p. 44. Since there is a difference of opinion in the interpretation of § 6 of said Act, as amended by Act No. 89 of May 12, 1943 (Laws of 1943, p. 212), plaintiff filed in the lower court a petition for a declaratory judgment in order to put an end to the controversy between him and defendant as to the meaning of tobacco dust as defined in said Section, which reads thus:

"The manufacture, and the purchase and sale in Puerto Rico, of cigars made with tobacco dust, *and the purchase and sale of tobacco dust for the manufacturing of cigars,* are hereby prohibited; *Provided,* That for the purpose of this Act, there shall be considered as 'tobacco dust' *any tobacco or tobacco remnants or mixture* the particles or fragments of which can pass through a screen having a mesh two millimeters in diameter; *Provided further,* That in the cigar-manufacturing process there shall be allowed or permitted the use of tobacco dust caused by the involuntary crumbling through the action and effect of manipulation, in a quantity not to exceed two (2) per cent of the weight of the quantity subject to such sifting process as may be established by the Department of Agriculture and Commerce in carrying out the provisions of this Act; *And provided, also,* That, for the purposes of this Act, any tobacco dust as defined in this Act that there may be in any warehouse, depot, establishment, office, or premises, for sale for the purpose of manufacturing cigars in Puerto Rico, shall be considered to be for cigar-manufacturing purposes." (Italics ours.) (P. 214.)

According to the interpretation placed by the plaintiff, tobacco dust, for the purpose of said Act, consists merely in the particles or fragments of tobacco which pass through a screen having a mesh two millimeters in diameter when subjected to the sifting process established by the Department of Agriculture and Commerce. The remainder of the cut tobacco subjected to that process which does not pass through the screen, does not constitute, according to the plaintiff, tobacco dust, and consequently it is not forbidden by law.

Defendant, on the other hand, considers that tobacco dust is any *cut tobacco* which, upon being subject to the sifting process, should contain particles or fragments of tobacco which pass through a screen having a mesh two millimeters in diameter, in a quantity greater than two per cent of the weight of the quantity subject to such sifting process. According to the defendant's view, if the cut tobacco contains fragments or particles which pass through the screen in excess of two per cent of the weight of the quantity subject to the sifting process, the whole cut tobacco, that which passes through the screen as well as that which does not, shall be considered tobacco dust, the possession of which is forbidden and subject to confiscation under said Act.

The defendant, without submitting to the jurisdiction of the court, filed a motion wherein he challenged its jurisdiction over the subject matter and over the person of the defendant, and attacked the sufficiency of the complaint, alleging that it did not state facts sufficient to constitute a cause of action.

His motion being dismissed, defendant filed his answer. He alleged that plaintiff had in his possession for sale and, on certain occasions sold, tobacco dust as it is defined in said § 6, and that he confiscated it pursuant to the aforesaid Act.

The controversy was reduced to determining which was the correct interpretation of the Act. The lower court rejected that given by defendant and in its judgment made a

résumé of what in its opinion was the correct interpretation thereof, thus:

". . . it is hereby decreed that the true and correct interpretation of § 6 of Act No. 89 of 1943 is that, upon prohibiting, as it does prohibit, the use in the cigar-manufacturing process and the purchase and sale of tobacco dust, which pursuant to the statutory definition is any tobacco, or tobacco remnant or mixture, the particles or fragments of which can pass through a screen having a mesh two (2) millimeters in diameter, the use of any tobacco is permitted which, being a part of a certain amount or lot whatsoever subject to the sifting process established by the Insular Department of Agriculture and Commerce in compliance with the Act, does not pass the screen, allowing it to contain tobacco dust in a quantity not to exceed two per cent (2%) of the weight of the amount subject to said sifting process; and it is further decreed that the construction of the aforesaid statutory provision adopted by the respondent is erroneous, by virtue of which his action in the present case is arbitrary and illegal, and he is hereby directed to return to the plaintiff the tobacco which belongs to the latter and was confiscated by defendant."

## I

█ The first error assigned by defendant consists in that the court denied his motion for the dismissal of the complaint. The lack of jurisdiction alleged by the defendant is predicated upon the fact that in the present case, although the action is directed against a public officer, it is in fact an action against the People of Puerto Rico, and the latter has not been sued nor has it given its consent to be sued. Does the judgment that might be rendered in this case affect the People of Puerto Rico? If it does not, we are of the opinion that it is an action against the public officer and not against the sovereign.

*Valiente & Co.* v. *Cuevas, Commissioner*, 65 P.R.R. 169 dealt with the interpretation of a contract, entered into between the plaintiff and the Superintendent of Public Works and approved by the Commissioner of the Interior, whereby plaintiff agreed to construct a bridge on an insular highway. We then said:

"An examination of the complaint leaves no doubt that the contract was made for and on behalf of the People of Puerto Rico, and that the latter, not the defendant officers, would be responsible for the payment of the claim—if the same were proper—if the action had been brought by an ordinary proceeding. It is expressly alleged in the complaint that the contract was entered into by Mr. Dávila, the Superintendent of Public Works, 'in the name and on behalf of the People of Puerto Rico', and we do not believe that the plaintiff pretends, considering the allegations of the complaint, that the defendants are bound to pay out of their own funds, in whole or in part, the price of the work performed for the benefit of the People of Puerto Rico. It being so it is obvious that the action is one against the People of Puerto Rico, even if the complaint was filed against its officers. (Citing authorities.)" (Pp. 171–72.)

In *Terceiro* v. *Homestead Division,* 53 P.R.R. 570, the action brought was to compel public officers to specifically perform a contract of sale and for the recovery of damages. We held that it was an action against the People of Puerto Rico, although the complaint was brought against the Homestead Division, inasmuch as the cause of action arose from a contract entered into with the plaintiff by public officers of the Insular Government in their official capacity on behalf and for the benefit of the Government of Puerto Rico. If plaintiff had obtained judgment in said case it would have been paid by the People of Puerto Rico, but since the latter had not been sued and much less given consent to be sued, the complaint was dismissed.

In the present case, the allegations of the complaint revealed that the judgment which might be rendered either way does not affect the People of Puerto Rico. No remedy is sought against the latter. It is merely sought to determine whether the interpretation placed on a statute by an officer who is charged by law with its execution, is correct. Under these circumstances, we are of the opinion that this is not an action against the People of Puerto Rico and, consequently, that the lower court did not err in dismissing the plea of lack of jurisdiction.

 It did not err either in dismissing the defense of insufficiency. It will suffice to repeat here what we said in *Quiñones* v. *Rodríguez,* 58 P.R.R. 219:

"Let us now consider the demurrer for lack of facts sufficient to constitute a cause of action. In initiating the discussion we should not lose sight to the fact that this is a complaint filed in a special proceeding provided by law as to declaratory judgments (Laws of 1931, page 378),[1] . . .

"Within the proceedings provided by said law the issue raised by a demurrer is not whether the interpretation proposed by the plaintiff is or is not correct. The true question to be decided is whether from the face of the complaint it appears that a justiciable controversy exists between the parties which may be decided by a court of justice according to said law.

"From the face of the complaint it appears that the plaintiff is the owner of a mortgage credit on a property of the defendants and that there exists a divergence of opinion between the parties as to the interpretation of a clause of the mortgage contract. As said Act grants either of the parties the right to go to a competent court and obtain the decision of this controversy either before or after the contract has been violated (Section 3) it is clear that the complaint states facts sufficient to constitute a cause of action. Which is the correct interpretation is a question which may be merely a question of law or a mixed question of fact and of law and it should be decided after hearing and weighing the evidence presented." (Pp. 221-222.)

## II

 We shall now turn to the merits, that is, pass upon the interpretation of § 6 of Act No. 16 of 1939, as amended by Act No. 89 of May 12, 1943. According to this provision, "tobacco dust" is *any tobacco, remnant or mixture,* which when subjected to the sifting process established by the Department of Agriculture and Commerce, contains particles or fragments which pass through a screen having a mesh two millimeters in diameter in a quantity in excess of two

---

[1] Section 2 of said Act says:

"*(Powers to construe,* etc.).—Every person . . . whose rights . . . are affected by any statute, . . . may obtain a determination of any difference in regard to the construction . . . of said statutes and also a declaration of the rights, . . . derived therefrom."

per cent of the weight of the quantity subject to said process. On the other hand, if the particles or fragments which pass through the screen do not exceed two per cent, this fact shows that the tobacco, remnant, or mixture of tobacco subject to the process, complies with the conditions required by law. If the legislative intent would have been to consider tobacco dust merely the particles or fragments which pass through the screen it would have been easy to say so in the following manner: *"Provided,* That for the purposes of this Act, tobacco dust is *any particle or fragment* of tobacco, remnant or mixture of tobacco which pass through a screen having a mesh two (2) millimeters in diameter." But this was not the legislative intent. The particles or fragments of tobacco which pass through the screen in excess of said two per cent, indicate that the tobacco, remnant, or mixture of tobacco subject to the process is "tobacco dust."

We are of the opinion that the construction placed on § 6 by the defendant is correct, and that in confiscating the lot of tobacco belonging to plaintiff because it did not comply with the conditions required by the statute, he acted in accordance with § 8 thereof as amended by Act No. 89 of May 12, 1943.[2]

For the reasons stated the judgment appealed from should be reversed and another rendered instead in conformity with the terms of this opinion.

Mr. Justice Marrero did not participate herein.

---

[2] Section 8 of said Act provides:

"The Commissioner of Agriculture and Commerce or the employees authorized by him are hereby empowered to confiscate . . . *any kind of tobacco which does not meet the conditions required by this Act,* . . . *Provided,* That the Commissioner of Agriculture and Commerce, or the persons designated by him, shall proceed to destroy the products thus confiscated as soon as the dealer, manufacturer, or merchant, has been finally adjudged guilty of the violation of this Act, by a court of competent jurisdiction." (Italics ours.)